**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JOSEPH BRZEZINSKI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-376 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| U.S. DEPARTMENT OF HOMELAND | : | | |
| SECURITY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**Gʀᴀɴᴛɪɴɢ Dᴇғᴇɴᴅᴀɴᴛs' Mᴏᴛɪᴏɴ ᴛᴏ Dɪsᴍɪss**

**I. INTRODUCTION**

Plaintiff Joseph Brzezinski brings this suit against Defendants the U.S. Department of
Homeland Security ("DHS"), the U.S. Citizenship and Immigration Services ("USCIS"), the
U.S. Department of State ("State Department"), the U.S. Consulate in Manila, and the respective
heads of each agency (collectively, "the Government") alleging unlawfully withheld and
unreasonably delayed agency action in violation of the Administrative Procedure Act ("APA") as
well as a violation of due process rights under the Fifth Amendment.  Specifically, Brzezinski
alleges that the visa application process of his fiancé, Leonila Santos Dalusong, has been delayed
for an unreasonably long amount of time.  Now before the Court is the Government's motion to
dismiss Brzezinski's complaint.  The Government moves to dismiss Plaintiff's complaint on the
grounds that it names officials who cannot provide the requested relief and fails to state a legally
sufficient claim.  For the reasons set forth below, the Court holds that Plaintiff has named certain
officials who have already completed their duties as part of the visa process and therefore

dismisses the claims with respect to those parties as moot.  Furthermore, the Court holds that Plaintiff has failed to state a claim of unreasonable delay for the remainder of his claims.

## II.  BACKGROUND

Joseph Brzezinski, a U.S. citizen, is the fiancé of Leonila Santos Dalusong, a citizen of the Philippines.  Compl. ¶¶ 1–2, 14, ECF No. 1.  Brzezinski filed a visa petition with USCIS on Dalusong's behalf on November 7, 2019, and paid all applicable fees.  *Id.* ¶ 17–18.  He is the "fiance visa petitioner" for Dalusong.  *Id.* ¶ 14.  USCIS approved the fiancé visa petition on March 31, 2020.  *Id.* ¶ 19.  The next step in the process would have been for the case to be sent to the National Visa Center ("NVC"), a branch of the State Department, for visa processing.  *Id.* ¶ 20.  "The NVC then generates a State Department case number and sends the petition to the U.S. Embassy or Consulate where the Beneficiary resides once a visa interview can be scheduled."  Defs.' Mot. Dismiss & Mem. Supp. Thereof ("Mot.") at 2, ECF No. 4; *see also* Compl. ¶ 21.  Brzezinski states that he has contacted the consulate, presumably in Manila, multiple times to "obtain a decision in this matter."  Compl. ¶ 22.

Accordingly, Brzezinski filed the instant complaint requesting mandamus relief to expedite the matter, alleging that the agency action was unreasonably delayed.  Though the complaint does not state the specific length of the delay, it has been approximately seventeen months since the date of the last Government action.  *See* Compl. ¶ 19.

In response to the complaint, the Government moves to dismiss pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  Mot. at 5–6.  The motion to dismiss states that the next step in the visa process would have been to conduct an interview with Dalusong at the consulate in Manila and that the time between the last government action and the filing of the complaint was approximately twelve months.  *See* Mot. at 1–2.  The Government contends that

the delay in Dalusong's visa process is a direct result of the COVID-19 pandemic.  *Id.* at 2–4.

As a result of the pandemic, the State Department suspended visa services across the globe from

March 2020 to July 2020, when it resumed limited activities.  *Id.* at 2–3.  Presently, the

resumption of visa services has taken place at varying speeds on a "post-by-post basis, consistent

with State Department guidance for safely returning our Nation's consular officials and

diplomats to work based on COVID-19 conditions where each post is located."  *Id.* at 3.  As a

result, visa services for the type of application Plaintiff's fiancé seeks are being processed only

under specific conditions that the Government contends are inapplicable to the present matter,

and Dalusong's consular interview has been delayed accordingly.  *Id.*  Over 30,000 fewer visas

were processed in January 2021 than were processed in January 2020, before the full impact of

the pandemic.  *See id.* at 3–4.

The Government moves to dismiss the claims against DHS, USCIS, and their respective

officials under Rule 12(b)(1) as moot.  *Id.* at 5.  It moves to dismiss the remaining claims under

Rule 12(b)(6) for failure to state a claim.  *Id.* at 6.[1]

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain

statement of the claim" to give the defendant fair notice and the grounds upon which the claim

rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).

Under Rule 12(b)(1), a claim can be dismissed for lack of subject-matter jurisdiction.  *See* Fed.

R. Civ. P. 12(b)(1).  To invoke federal jurisdiction, a plaintiff must demonstrate the existence of

---

[1] The Government's reply brief contains citations to text in Plaintiff's opposition brief
that is not included in the opposition.  *See, e.g.*, Defs.' Reply Supp. Mot. Dismiss at 4, ECF No.
7 (claiming to quote 8 U.S.C. § 1571(b) from Plaintiff's opposition, although it is not cited in
Plaintiff's opposition).  Because the Court grants the Government's motion without reliance on
the Government's reply, no explanation of this problem was necessary to resolve this motion.

an actual and concrete dispute. *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018). If, at any point before or during the proceedings, the case becomes moot, then such a case is no longer within the jurisdiction of the federal courts. *Id.* However, although "a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000), there is an exception if "there is no reasonable expectation that the wrong will be repeated," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)).

The Federal Rules of Civil Procedure also require a plaintiff to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But a motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true,

*see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

As mentioned above, the Government moves to dismiss the claims against DHS, USCIS, and their respective officials under Rule 12(b)(1) as moot, and the remaining claims under Rule 12(b)(6) for failure to state a claim.  *See* Mot. at 5–6.  For the reasons given below, the Court grants the Government's motion to dismiss.

Preliminarily, the Government asserts that it was not required to produce an administrative record under the local rules because there is no challenge to final agency action. Mot. at 13 n.5.  Under Local Civil Rule 7(n), an agency must file an administrative record of the contested action, "unless otherwise ordered by the Court."  LCvR 7(n)(1).  Plaintiff does not address this record requirement in his opposition.  *See generally* Pl.'s Opp'n Defs.' Mot. Dismiss ("Opp'n"), ECF No. 6.  With no opposition, the Court assumes without deciding that the Government did not need to produce an administrative record.

### A.  Mootness

The Government moves to dismiss Plaintiff's claims against DHS, USCIS, and their respective heads for lack of subject-matter jurisdiction under Rule 12(b)(1).  Mot. at 5. Specifically, the Government asserts that, because both agencies have completed their adjudication of the visa petition, the claims against them are moot.  *Id.*

As explained above, a claim is moot if there is no "actual and concrete" dispute such that the resolution of the claim will not have direct consequences for the parties involved.  *Sanchez-Gomez*, 138. S. Ct. at 1537.  However, a defendant's voluntary cessation of offending conduct is not sufficient to moot a claim, *see Laidlaw*, 528 U.S. at 174, unless "there is no reasonable

expectation that the wrong will be repeated," *W.T. Grant Co.*, 345 U.S. at 633 (quoting *Aluminum Co. of Am.*, 148 F.2d at 448).  In considering a motion under Rule 12(b)(1), the Court must take the facts stated in the complaint as true.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

According to the complaint, Plaintiff filed a fiancé visa petition on behalf of Dalusong on November 7, 2019, and USCIS approved this petition on March 31, 2020.  Compl. ¶¶ 17–19. The next step in the process, after some internal State Department processing, would be for the State Department to conduct an interview with Dalusong.  *See id.* ¶¶ 20–21.  This step has not yet been taken and that allegedly unreasonable delay is the source of this dispute.  *See id.* ¶¶ 21– 22.  However, whatever the reasonableness of the delay in conducting Dalusong's visa interview, according to Plaintiff the case is out of the hands of USCIS and DHS and Plaintiff alleges no facts to suggest that the conduct of either agency is to blame for the delay.  *See id.* ¶¶ 19–20; *see also Khanom v. Kerry*, 37 F. Supp. 3d 567, 574 (E.D.N.Y 2014) (holding that claims against USCIS were moot because USCIS had already "affirm[ed] its previous approval of the Petition").  Plaintiff's only substantial argument against mootness is that the voluntary-cessation exception applies, *see* Opp'n at 9–10, but the voluntary-cessation exception to mootness does not apply here because Plaintiff has pleaded no facts to suggest that there is any reasonable expectation that USCIS or DHS would be asked again to process the application.  Plaintiff's claims against USCIS, DHS, and their respective heads are therefore dismissed as moot.[2]

---

[2] Plaintiff also argues that his claims against USCIS, DHS, and their respective heads are not moot because he "continues to have an injury for which the court can award relief"—namely, "damages pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, among others."  Opp'n at 9.  But the Equal Access to Justice Act appears to concern only a "judgment for costs," not damages.  28 U.S.C. § 2412(a)(1).  Plaintiff's complaint similarly requests "[a]ttorney's fees, legal interests, and costs expended herein, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412."  Compl. at 8.  Plaintiff cites no authority that such a claim for costs can defeat

## B.  Sufficiency of the Complaint

The Government moves to dismiss the remainder of Plaintiff's claims under Rule 12(b)(6).  Mot. at 6.  Specifically, the Government contends that even when the facts alleged by Plaintiff are taken as true, the roughly seventeen months at issue is, as a matter of law, not unreasonable.[3]  *Id.*

Per 5 U.S.C. § 706(1), this Court may "compel agency action unlawfully withheld or unreasonably delayed."  Simultaneously, under 28 U.S.C. § 1361, federal courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard."  *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).  In determining whether an agency action has been unreasonably delayed, Plaintiff and the Government appear to agree that the Court applies the six-factor test established by the D.C. Circuit in *Telecommunications Research*

---

mootness.  Moreover, there is no claim that such costs and fees cannot be recovered from the remaining defendants should Plaintiff prevail.  Accordingly, the Court will not allow mootness to be defeated for that reason.

[3] No party explicitly addresses whether the relevant time period for purposes of analyzing unreasonable delay extends to the time of filing of the complaint as opposed to the time at the opinion's issuance (or some other time).  The Court has not located a definitive statement in the case law, but cases seem to focus on the delay up to the issuance of the opinion.  *See, e.g.*, *Ghadami v. United States Dep't of Homeland Sec.*, 19-cv-397, 2020 WL 1308376, at *1–2, *8 (D.D.C. Mar. 19, 2020) (analyzing twenty-five month delay, which corresponds to delay between "Ghadamy [being] informed that he was being considered for a waiver on March 2, 2018," and opinion's issuance on March 19, 2020, as opposed to February 15, 2019 date of complaint filing); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91, 95 (D.D.C. 2020) (analyzing twenty-five month delay, which corresponds to delay between when "the government began assessing Abbasi's waiver eligibility in January 2018" and opinion's issuance on February 11, 2020, as opposed to April 14, 2019 date of complaint filing).

*& Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). *See* Mot. at 6; Opp'n at 6.

The factors are:

> (1) the time agencies take to make decisions must be governed by a rule of
> reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory
> scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less
> tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency
> activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in
> order that agency action is "unreasonably delayed."

*Id.* at 80 (cleaned up). The first factor of the *TRAC* test is the most important and is accordingly

weighted more heavily than the rest. *In re Core Communs., Inc.*, 531 F.3d 849, 855 (D.C. Cir.

2008).

In cases involving unreasonable delays, these factors have been employed at the motion

to dismiss stage. *See, e.g.*, *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152–55 (D.D.C. 2017) (granting

motion to dismiss based on *TRAC* analysis); *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL

3082018, at *5 (D.D.C. June 10, 2020) ("in cases like this one involving claims of unreasonably

delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to

dismiss stage"). However, these factors can only be applied if the "record contains enough facts

to evaluate the *TRAC* factors" at this stage. *Id.* In this instance, the facts in the record are

sufficient for a *TRAC* analysis.

The first two *TRAC* factors weigh in favor of the Government.  "'There is no congressional imposed timeline' for processing" fiancé visa applications.  *Mohammad v. Blinken*, No. 20-cv-03696, 2021 WL 2866058, at *3 (D.D.C. July 8, 2021) (quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020)).  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka*, 246 F. Supp. 3d at 153–54.  In the absence of a congressionally supplied timeframe, courts typically look to case law for guidance.  *See Sarlak*, 2020 WL 3082018, at *6.  The delay at issue here was approximately eleven months when the complaint was filed and now is approximately seventeen months.[4]  *See* Compl. ¶ 19.  Plaintiff asserts that "there are many courts that *have* found delays of over one year—like the delay in this case—to be unreasonable."  Opp'n at 7.  However, the cases finding such delays unreasonable that Plaintiff cites to support this contention all deal with delays of two years or longer.  *Id.*; *see, e.g.*, *Ren v. Mueller*, No. 6:07-cv-790, 2008 WL 191010, at *11 (M.D. Fla. Jan. 22, 2008) (holding that the plaintiff adequately alleged that a delay of almost four years was unreasonable under the APA); *Gelfer v. Chertoff*, No. C 06-06724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (holding that the reasonableness of a delay of longer than two years was sufficiently fact dependent to survive a motion to dismiss).  Plaintiff cites no case that found an unreasonable delay when the delay was under two years.  *See* Opp'n at 7.  Additionally, there are a plethora of cases finding delays longer than two years to not be unreasonable.  Mot. at 7–8; *see, e.g.*, *Ghadami*, 2020 WL 1308376, at *8 (finding that a twenty-five month delay was not long enough to tilt the first two *TRAC* factors in favor of the plaintiff); *Bagherian*, 442 F. Supp. 3d at 94 (holding that a twenty-five month delay is not unreasonable as a matter of law).  To be

[4] The last Government action on this matter is dated March 31, 2020.  Compl. ¶ 19. Plaintiff's complaint was filed on February 11, 2021.  *See* Compl. (filed Feb. 11, 2021).

sure, whether a government agency is acting under a "rule of reason" cannot be determined "in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful" and requires consideration of a variety of other factors.  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  However, in the absence of any case law finding a delay of similar length unreasonable, and the presence of cases finding longer lengths to not be unreasonable, the Court finds that the first two *TRAC* factors weigh in favor of the Government.

The third and fifth *TRAC* factors weigh at least somewhat in Plaintiff's favor.  Although Plaintiff does not appear to explicitly plead how he is harmed by the delay, it is reasonable to infer such harm from the fact that Plaintiff and Dalusong are engaged.  *See* Compl. ¶ 35 (alleging "loss of consortium between Plaintiff and Leonila Santos Dalusong").  This Court has previously found such circumstances to tilt these factors in favor of a plaintiff.  *See Mirbaha v. Pompeo*, 513 F. Supp. 3d 179, 186 (D.D.C. 2021).  Though *Mirbaha* involved a medical urgency in childbearing that is not at play in the present case, the loss of consortium and general diminishment in quality of life for the engaged couple nonetheless tilt these factors somewhat in Plaintiff's favor.

The fourth *TRAC* factor is inconclusive.  The Court must consider the effect expediting the agency action would have on "agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  To this end, the Court will not compel an agency action if doing so would simply move Plaintiff to the head of the line at the expense of others waiting for the same action. *See, e.g.*, *Mirbaha*, 513 F. Supp. 3d at 186; *Skalka*, 246 F. Supp. 3d at 153.  Plaintiff responds that several other federal district courts have been reluctant to shift the consequences of generic delays, lack of agency resources, or other "[b]ureaucratic inadequacy" on applicants who did not

cause the problems.[5]  Opp'n at 8 (alteration in original) (quoting *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 744 (E.D. Va. 2008)); *see, e.g.*, *Zhou v. FBI Director*, No. 07-cv-238, 2008 WL 2413896, at *7 (D.N.H. June 12, 2008); *Aslam*, 531 F. Supp. 2d at 744; *Alkeylani v. DHS*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007). However, Plaintiff has not pleaded anything from which the Court could infer that Plaintiff might in the future have the winning argument on this factor.  In other words, Plaintiff has not pleaded any facts implying that granting his request would do anything more than move him to the front of the line at the expense of others similarly waiting.  As such, even at the motion to dismiss stage, the Court finds the fourth *TRAC* factor to favor neither Plaintiff nor the Government.

Regarding the sixth *TRAC* factor, the Government contends that because Plaintiff makes no allegations of bad faith or impropriety, the sixth *TRAC* factor should favor the Government. Mot. at 12–13.  But that seems to be a misreading of this factor.  The *TRAC* court stated that an allegation of bad faith is unnecessary to find an unreasonable delay.  750 F.2d at 80.  In instances where a plaintiff makes no allegation of bad faith, courts often have either chosen not to apply the sixth *TRAC* factor at all, *see, e.g.*, *Mirbaha*, 513 F. Supp. 3d at 186, or acknowledged that this does not count against the plaintiff's case, *see Ghadami*, 2020 WL 1308376, at *9. Accordingly, this factor does not affect the outcome here.

*          *          *

---

[5] The Government contends that the State Department's COVID-19 health and safety protocols are to blame for the global backlog in visa processing.  Mot. at 2–4.  But many organizations have been able to adapt their operations to the pandemic.  At the motion to dismiss stage, the Court cannot credit such factual contentions by the Government that are not contained in the Complaint.

The first two factors weigh in favor of the Government, factors three and five weigh in favor of Plaintiff, and the rest are inconclusive.  However, as mentioned above, the first *TRAC* factor, which requires an agency's timing to be governed by a rule of reason, is the most important factor and weighed more strongly than the rest. *In re Core Communs., Inc.*, 531 F.3d at 855.  Because the first *TRAC* factor favors the Government, this tilts the analysis in favor of granting the Government's motion to dismiss.  With that said, the preceding analysis shows that the Government's delay of Plaintiff's fiancé visa application may not be considered reasonable indefinitely, at least in the context of a motion to dismiss.  Nonetheless, application of the six-factor *TRAC* test shows that at this time, Plaintiff has failed to state a claim.  Accordingly, the case is dismissed pursuant to Rule 12(b)(6).

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 15, 2021                                   RUDOLPH CONTRERAS
                                                            United States District Judge